QUANTITY OF WEARING APPAREL (CURTIS v.). See Case No. 3,504.

QUANTRILL (SANGSTER v.). See Case No. 12,321.

QUARLES, PETITION OF. See Case No. 7,946.

QUARLES (MORANCY v.). See Case No. 9,788.

## Case No. 11,501.

### The QUEEN.

[2 Ben. 533.] [1]

District Court, S. D. New York. Nov., 1868. [2]

COLLISION IN NEW YORK HARBOR—STEAMER AND SCHOONER—PORTING HELM—LIGHTS.

1. Where a collision occurred after sunset between a steamer and a schooner, and the schooner, though having no lights, was seen from the steamer at a distance variously estimated by her witnesses as from three-quarters of a mile to two miles, and the steamer alleged as a defence that the schooner changed her course, and it appeared that on seeing the alleged change of the schooner's course, the steamer's helm, which was then amidships, was ported and kept hard a-port till the collision, although the schooner was then in such a position and so far off that there was time for the steamer, by a slight change of her helm to starboard, to have avoided the collision: *Held*, that although the schooner should have had her lights set, the absence of them did not contribute to the collision.

2. The schooner's course being seen and known by the steamer, the burden of proof was on the latter to show that the schooner changed her course at such a time that the steamer could not keep out of her way.

3. She had failed to furnish such proof.

4. The porting of the steamer's helm under the circumstances was the cause of the collision, and was a fault.

5. There is no obligation on a steamer, when there is danger of a collision with a sailing vessel, to port rather than to starboard her helm.

In admiralty.

E. H. Owen, for libellants.

C. Donohue and J. Chetwood, for claimants.

BLATCHFORD, District Judge. This is a libel for a collision which took place early on the evening of the 13th of October, 1866, in the lower bay of New York, between the schooner Mary Ann Magee and the British steamer Queen. The schooner was sunk by the collision, and the libel is filed by her owners. She had come from the eastward through Long Island Sound, and was bound to Philadelphia. The steamer was bound to New York from sea. The schooner had no cargo. She had nearly all her sails set, the wind being moderate from the northeast, and was going at the rate of five or six knots an hour, and heading about south by west. She showed no light. The claim in the libel is that the persons on board of the schooner, when they first discerned the steamer, saw her from about a point and a half to two points on the starboard bow of the schooner, and from about a half to three-quarters of a mile distant; and that the steamer, when within a short distance of the schooner, suddenly changed her course and ran into the schooner. The steamer had all proper lights set. The claim in her answer is, that she saw the schooner a little on her port bow

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Reversed in Case No. 11,502.]

and some distance ahead; that her helm was then ported so as to bring the schooner from one and a half to two points on her port bow; that the respective courses of the two vessels continued until they were within a short distance of each other, when the helm of the schooner was starboarded and she headed across the steamer's bow; and that the engine of the steamer was immediately stopped and backed and her helm ported, but the collision could not be avoided. The steamer with her stem struck the schooner on her starboard side, forward of her main rigging and about amidships.

As it was after sunset the schooner ought to have had her lights burning, but the absence of them cannot on the testimony be held to have contributed to the collision, as the pilot of the steamer says that when he first saw the schooner he saw how she was heading, and that he saw her before she was reported to him, and the witnesses from the steamer estimate the distance of the schooner when they saw her at from three quarters of a mile to two miles and a half. The schooner was, therefore, seen by the steamer at a sufficient distance off for the steamer to avoid her, and the course of the schooner was perceived by the pilot of the steamer at a sufficient distance off. The absence of lights on the schooner is not testified to, by any of the witnesses from the steamer, as having caused them any embarrassment, nor is any uncertainty alleged by them as to the position and course of the schooner at any time.

It was the duty of the steamer to keep out of the way of the schooner. She attempted to do so on seeing the schooner, and recognized her obligation by porting her helm until she brought the schooner to about two points on the port bow of the steamer. The witnesses from the steamer say that at all times until the schooner, as they allege, starboarded her helm and went across the steamer's bow, the schooner was not on the starboard bow of the steamer, while the testimony from the schooner is that the steamer was seen from one and a half to two points on the starboard bow of the schooner. The master of the steamer says that when he first saw the schooner, two miles and a little more off, she was head and head with the steamer in a line. This is also the testimony of the pilot of the steamer, who says that by porting the helm of the steamer when he first saw the schooner he swung the steamer off about two points and brought the schooner about two points on the port bow of the steamer. The chief officer of the steamer says that when he first saw the steamer (and it was he who reported her), she bore right ahead and, if anything, on his port bow. The defence of the steamer is put on the point that, after the steamer had ported so as to bring the schooner two points on the port bow of the steamer, the schooner suddenly starboarded her helm at so short a distance from the steamer that the collision could not be then avoided by the steamer, and that it was the fault wholly of the schooner. The pilot of the steamer says that the schooner starboarded at a distance of six hundred feet from the steamer, and that he immediately ordered the wheel of the steamer to be put hard a-port and her engine to be stopped and backed at full speed. As a reason for this order to hard a-port the pilot of the steamer says that after he first ported he gave an order to steady, but that, before that order was obeyed, he saw that the schooner had starboarded and gave the order to hard a-port; that there was not time to put the helm of the steamer to starboard; and that he does not think the order to hard a-port affected the motion of the steamer at all before the collision. The master of the steamer says that the order to hard a-port and stop was given when the schooner was about one thousand feet off from the steamer. The first officer of the steamer says that the schooner was six hundred feet off when she starboarded. Alltree, the second mate of the steamer, says that when the order to hard a-port was given on the steamer the schooner was six hundred or nine hundred feet off. Whalen, a seaman who was at the wheel of the steamer, says that the first order was steady port, which means port a little; that he changed the steamer's course by porting a point and a half; that, some time after the order to port was given, an order came to hard a-port; that, after the hard a-port, the schooner made her appearance on the port bow of the steamer, heading across the bow of the steamer; that on the first order to port he put the wheel over ten degrees of the telltale, hard a-port being forty-five degrees, and held it there until he was told to steady; that when the order to steady came he eased the wheel back to midships; that the next order was hard a-port as hard as they could give it to her; that they put the wheel right hard across; that they had held the helm hard a-port for from five to eight minutes, as near as he can recollect, before the collision; and that they held the wheel hard to port to the time of the collision. The master of the schooner, who was at her wheel, says that he made no change of his wheel on seeing the steamer, or at any time up to the collision; and that he saw the steamer a half a mile or a mile off. He also says, that the steamer struck the schooner about fifteen to twenty feet forward of the main rigging on the starboard side, angling aft.

The schooner's position and course being seen by, and known by, the steamer, and it being the duty of the steamer to keep out of her way, and the duty of the schooner to keep her course, the burden of proof is on the steamer to show that the schooner did not keep her course, and that, if she changed her course, she did so at such a time, and under such circumstances that the steamer

could not keep out of her way. For if, after the schooner starboarded her helm, as alleged, she and the steamer were then proceeding in such direction as to involve risk of collision, it was as much the duty of the steamer then to keep out of her way as it was before the schooner starboarded. On all the evidence I am unable to resist the conclusion that the steamer has failed to establish that she could not have kept out of the way of the schooner. She struck the schooner on the starboard side, about amidships, angling aft. It is manifest from this that a very slight starboarding of her helm on the part of the steamer would have caused her to clear the schooner, even if the schooner did, as alleged, starboard her helm and change her course. Assuming that the schooner did so, the steamer, by her own showing, persisted in porting from a midships helm to hard a-port, after the schooner starboarded. She thus threw herself directly toward and not away from the schooner. The testimony of the pilot of the steamer that he could not have starboarded when the schooner did so, is wholly contradicted by the testimony of Whalen, who was at the wheel of the steamer, and who shows that when the schooner starboarded and the order was given to hard a-port the wheel of the steamer, her wheel was amidships. It was therefore as easy to have starboarded the helm of the steamer at that time as to have ported it hard a-port. The error of the steamer was in then porting. The schooner, when she starboarded, if she did so, was far enough off, six hundred to one thousand feet, as shown by Whalen, to allow the steamer's wheel to be put from midships to hard a-port and remain there for some time before the collision. The same time would have sufficed to starboard the wheel enough to avoid the collision. Even if the steamer had not then starboarded, but had simply stopped and reversed without porting or starboarding, there would undoubtedly have been no collision. A steamer, when there is risk of collision, is required to stop and reverse. There is no obligation upon her to port rather than starboard, or to starboard rather than port her wheel, unless the porting or the starboarding is the proper manœuvre whereby to avoid the collision, and whichever is such proper manœuvre she is bound to follow it. I have observed, in collision cases between steamers and sailing vessels, a propensity shown on the part of the steamer very often to port her helm, when that was not the proper manœuvre to avoid the collision, and when the porting was clearly improper. When two steamers are meeting, end on or nearly end on, so as to involve risk of collision, the helms of both must be put to port. But when a steamer and a sailing vessel are proceeding in such directions as to involve risk of collision, the steamer must keep out of the way of the sailing vessel, and if to do

so a movement of her helm is necessary, there is no more obligation on her to port than there is to starboard, unless porting rather than starboarding will avoid the collision. The erroneous idea seems to prevail on the part of those directing the movements of steamers, that they will be free from blame if they port on meeting a sailing vessel with risk of collision; and I have had several cases before me recently of collisions between steamers and sailing vessels, where, as in the present one, the collision would not have happened, if the steamer had not persisted in porting instead of either starboarding or making no change at all in her wheel.

No fault, contributing to the collision, is shown on the part of the schooner, and there must be a decree for the libellants with costs, with a reference to a commissioner to ascertain the damages caused to the libellants by the collision.

[On appeal to the circuit court the decree of this court was reversed, it being held that the collision was the fault of the schooner, and the libel of her owners was therefore dismissed. Case No. 11,502.]